**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Luther BARNES, Defendant-Appellant.**

No. 77–5827.

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1978.

J. Roger Thompson, Frank J. Petrella, Atlanta, Ga., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant Robert Barnes appeals from convictions on three counts: 1) conspiracy to import and possess cocaine with intent to

distribute;[1] 2) importation of cocaine;[2] and 3) possession of cocaine with intent to distribute.[3] He was jointly tried with Donna Ballard.

According to the government's theory of the case, Appellant, Donna Ballard, Robert McClure, and Donna's sister, Lisa,[4] conspired to import and distribute cocaine. Donna, Lisa and McClure were arrested after a customs inspector discovered cocaine in McClure's suitcase. Barnes was arrested later. The group was returning from Cali, Colombia.

McClure became a government witness. He confessed that they had gone to Colombia to buy cocaine and to import it into the United States for distribution. He indicated that Appellant devised the plan whereby the young ladies would carry the drug into the country. According to McClure, a disagreement arose in Colombia and, as a result, McClure was left with the job of physically importing the cocaine. Appellant denied any part in the scheme.

Appellant raises the following six points on appeal: 1) The district court committed plain error by failing to instruct the jury as to the limited use for which it could consider the impeachment of Donna Ballard; 2) the court admitted the cocaine as evidence without a showing of proper chain of custody; 3) evidence of Appellant's past drug deals should not have been admitted; 4) having admitted evidence of the past drug deals, the court should have instructed the jury as to its limited use; 5) Lisa Ballard's hearsay statement should not have been admitted into evidence; and 6) the court erred by failing to answer a question from the jury before it rendered its decision. We affirm the conviction.

## I.  IMPEACHMENT EVIDENCE

Appellant Barnes asserts that the district court erred by failing sua sponte to instruct the jury on the limited purposes for which it could consider the impeachment of Donna Ballard. Although Donna had made a confession which fully implicated herself and Barnes, she testified on direct examination that neither she nor Barnes was involved in the crimes alleged. On cross-examination, the government questioned her extensively about facts which she had related in her confession. Donna denied making the confession, and she specifically denied the facts establishing that she, Lisa, McClure and Barnes had planned to import drugs into the United States. Part of the government's summation focused on Donna's confession. The government argued that Donna had in fact made a voluntary confession and that the similarity between Donna's confession, McClure's confession, Lisa's statement, and the testimony of two Drug Enforcement Agency (D.E.A.) agents corroborated the truth of Donna's confession. The judge and the jury decided the question of voluntariness against Donna.[5]

We do not agree with Barnes' contention that the court should have included a limiting instruction when none was requested. In *United States v. Hill*, 481 F.2d 929 (5th Cir.), *cert. denied*, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973), we were presented with the same situation. Inconsistent out of court statements were used to impeach Hill's co-defendant who testified at trial on Hill's behalf. Hill argued that these out of court statements of his co-defendant were admitted as substantive proof against him. His counsel had failed to request a limiting instruction. We recognized in *Hill* that where a defense witness is impeached by the government by inconsistent prior testimony, "there is less potential for abuse since the Government has already presented its case and cannot count on the witness being called and questioned about facts in the statement." *Id.* at 932. Accordingly, we held that the trial court did not err by failing to instruct the jury on the

---

1. 21 U.S.C. § 963.

2. 18 U.S.C. § 2 and 21 U.S.C. § 952(a).

3. 18 U.S.C. § 2 and 21 U.S.C. § 841(a).

4. Lisa Ballard fled before trial.

5. *United States v. Ballard*, 586 F.2d 1060 (5th Cir. 1978).

use of the inconsistent statement when no instruction was requested.

An exception to *Hill* was announced in *United States v. Sisto,* 534 F.2d 616 (5th Cir. 1976). In *Sisto,* we held that where the government impeaches a defense witness by introduction of inconsistent statements and where this impeachment evidence also provides the only direct evidence of a crucial element of the offense, it is plain error not to instruct the jury with respect to its limited use. *See also United States v. Palacios,* 556 F.2d 1359 (5th Cir. 1977). In the instant case, unlike *Sisto,* there was substantial evidence other than Donna Ballard's confession which tended to show Barnes' participation in the crime. McClure's testimony described in detail the plan allegedly engineered by Barnes.

Moreover, it is not clear that testimony regarding Donna Ballard's inconsistent statement could not have been admitted as substantive evidence against Barnes. According to cases decided since *Hill,* such evidence may be admissible under Federal Rule of Evidence 803(24). *United States v. Williams,* 573 F.2d 284 (5th Cir. 1978); *United States v. Leslie,* 542 F.2d 285 (5th Cir.), *rehearing en banc denied,* 545 F.2d 168 (5th Cir. 1976); *United States v. Iaconetti,* 540 F.2d 574 (2d Cir. 1976), *aff'g,* 406 F.Supp. 554 (E.D.N.Y.). In *Leslie,* the appellant argued that the trial court erred by inadequately instructing the jury that prior inconsistent statements of a co-defendant could be used only for impeachment purposes. We held that even if the instructions were inadequate, the statements were admissible as substantive evidence. The appellant in *Williams* complained that the trial judge had admitted over objection a prior inconsistent statement *offered* as substantive proof. We found the evidence to be admissible. Both decisions relied on Federal Rule of Evidence 803(24) which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Testimony regarding Donna Ballard's statement meets the criteria of Rule 803(24). First, there are a number of indicia of its reliability. Donna was available and in fact testified with respect to the statements credited to her.[6] Thus, the jury was able to assess for itself the veracity of Donna's statement. In addition, Donna's statement was strongly corroborated by the testimony of the agents who took it and by McClure's testimony. The accounts of the scheme given by McClure and by Donna in her confession were remarkably similar.

The content of Donna's confession also meets the test of probity under Rule 803(24)(B). Without this testimony, the jury was left to decide a "lying contest" between McClure and the agents on one hand, and Donna and Barnes on the other. Co-defendants Donna Ballard and Robert Barnes did not seek a severance. They were represented by the same counsel. When Donna testified and denied her role in the scheme, she also expressly exculpated Barnes. Given this posture, it would be particularly important substantively to rebut her testimony. There could hardly be a

---

**6.** At trial, Donna denied making the statement. In the alternative, she claimed that she made the statement involuntarily. We were faced with the same problem in *Leslie* where the persons making the inconsistent statements denied making part of them, claimed that they made them under the influence of drugs, and stated that they thought they would receive more favorable treatment if they made them. We were satisfied in *Leslie,* as we are here, that the government satisfactorily rebutted this testimony. Indeed, in this case, both the judge and the jury made separate findings of voluntariness.

more effective method to do so than by her own words.

With respect to the final criterion under Rule 803(24), the interests of justice are best served when the jury is provided with as much information as possible on an issue so beclouded by conflicting testimony. *See United States v. Williams,* 573 F.2d 284 (5th Cir. 1978).

██ The decisions in *Leslie* and *Williams* augment the persuasiveness of *Hill* and seriously weaken Barnes' argument. Since the government may have been able over Barnes' objection to present testimony regarding Donna's confession as substantive evidence against him, Appellant Barnes can hardly complain that the trial judge *independently* should have instructed the jury that this testimony could be used only for impeachment purposes.

## II. PHYSICAL EVIDENCE

The appellant also assigns as error the admission into evidence of the cocaine taken from McClure at the airport. He asserts that, due to conflicting testimony as to the weight of the cocaine seized, the government failed to establish a chain of custody sufficient to admit the physical evidence, Exhibit 3. We cannot agree.

The Customs inspector who discovered the cocaine in the lining of McClure's suitcase testified that it was contained in a number of small plastic bags. The powder in each separate bag was field tested and each of them tested positive for cocaine. He identified his initials on the inside plastic bag in Exhibit 3. He turned the plastic bags over to Agent Putsche.

Agent Putsche found the gross weight of the powder, 11 plastic bags, plus an additional bag, to be 123 grams. He then placed all of that into an evidence envelope and sealed it. He identified the envelope in Exhibit 3 as the same one in which he had placed the substance he received from the Customs inspector, and which he had delivered to the laboratory.

The chemist identified the same envelope in Exhibit 3 from his identification markings found in at least three places. He noted that he left the top sealed, and that he cut the envelope from the bottom, marked the inside package, and re-sealed the bottom when he completed his analysis. When he received the package, the powder was contained in the various plastic bags.

He found the weight of the package as he received it, including the powder, the various plastic bags, and the evidence envelope, to be 153.9 grams. The weight of the powder, alone, was 92.8 grams.

██ The appellant argues essentially that the possible disappearance of 40 grams of the cocaine creates a serious doubt as to the reliability of the evidence. From the premise that 40 grams of cocaine are missing, the appellant moves to the conclusion that there is a reasonable probability that the proffered evidence was different in quality from the evidence seized. The argument does not follow. First, the agent explained the discrepancy by testifying that the cocaine was weighed a number of times and that there is usually a discrepancy. In addition, the testimony of the three men who handled the evidence established that the exhibit remained sealed when it was not being tested. Moreover, even if Appellant were correct that 40 grams were missing, he still does not explain how this would change the quality of the remaining 90 grams. All that is necessary for conviction is a measurable amount of the controlled substance. *United States v. Daughtry,* 502 F.2d 1019 (5th Cir. 1974) (conviction for possession of .37 grams of powder containing 1/10,000th of an ounce of cocaine is affirmed). The jury in this case was charged to that effect. Barnes would appear to the jury to be no less guilty if it were shown that he conspired to import 93 instead of 123 grams of cocaine. In the absence of a showing of physical tampering in any relevant respect, we uphold the decision of the trial judge. 502 F.2d 1022 n.3 *quoting United States v. Brown,* 482 F.2d 1226 (8th Cir. 1973); *United States v. McDowell,* 539 F.2d 435 (5th Cir.), *rehearing en banc denied,* 542 F.2d 575 (5th Cir. 1976).

## III. ADMISSIBILITY OF PRIOR OFFENSES

Barnes next complains that the admission of evidence of his past drug dealings was error. Early in the trial, government counsel questioned McClure as to whether he had used drugs with Barnes. Defense counsel objected on the basis that such character evidence is inadmissible to show conformity therewith. *See* Fed.R.Evid. 404(b). The government argued that evidence of Barnes' other offenses involving drugs tended to establish his intent to deal in drugs in this case. The court correctly weighed the government's need for the evidence against the possibility of undue prejudice to Barnes. The testimony was then ruled inadmissible. The court stated, however, that it would later re-evaluate the government's need for such evidence and that it might change its ruling based upon the government's need in rebuttal.

■ According to the recent decision of *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), the admissibility of past offenses to prove intent is determined by a two part test. First, it must be "determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense . . . ." *Id.* at 913. Second, the court must determine whether the incremental probative value of the offense is outweighed by the potential prejudice to the defendant. These are questions within the sound discretion of the trial judge. *Id.* at 916; *United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976).

In this case, the evidence of offenses to which Barnes objects could hardly be more similar to the offense with which he is now charged. As a result of the government's renewed questions, it was revealed that Barnes had dealt in drugs one or two times before, that he had previously been involved in drugs with McClure, and that he had participated in a scheme quite similar to the crime alleged here. Barnes had been arrested at an airport with a Mr. Reid when they entered the country from Colombia. Reid had been carrying cocaine. Finally,

Appellant testified and admitted to the extrinsic offenses. It is not contested that he committed them. The first prong of the *Beechum* test has therefore been satisfied.

The second part of the *Beechum* analysis requires the court to weigh the incremental probity of the prior offense against the dangers of undue prejudice. 582 F.2d at 916. We have previously held that evidence of other offenses is relevant to a defendant's intent in a subsequent similar case. *E. g.*, *United States v. Trevino*, 565 F.2d 1317 (5th Cir. 1978); *United States v. Brunson*, 549 F.2d 348 (5th Cir. 1977); *United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976); *United States v. Alejandro*, 527 F.2d 423 (5th Cir. 1976). In *Alejandro*, the defendant was charged with conspiracy to distribute illegal drugs. As in the instant case, the government had no objective facts tying the defendant to the conspiracy. This case, like *Alejandro*, is unlike the cases where "proof of the commission of the act carried with it the evident implication of a criminal act." *Fallen v. United States*, 220 F.2d 946, 948 (5th Cir. 1955) (defendant charged with theft of automobile by changing serial numbers). In a conspiracy case where the defendant is a passive participant, proof of the defendant's knowledge of and intent to participate in the substantive crime is a primary method of proving his guilt. The passive participant's otherwise innocuous and lawful acts shed no light on his state of mind.

■ In order to assess the incremental probity of the disputed evidence, we must look to the posture of the case at the time the evidence of the previous offense was admitted. *United States v. Beechum*, 582 F.2d 898 at 916 (5th Cir. 1978). When the government renewed its questions regarding Barnes' previous involvement with drugs by asking Barnes whether he had ever before dealt in drugs with McClure, its need for the evidence was clear. At this juncture, McClure, the government's main witness, had testified that Barnes had organized the trip to Colombia for the purpose of smuggling cocaine. On the other hand, both Barnes and Donna Ballard had

testified that Barnes had not been involved in any way in the alleged crime and that he had not even used drugs while in Colombia. Barnes testified that his trip to Colombia with McClure, Donna, and Lisa was for a legitimate business purpose. The only objective, undisputed facts were that four persons traveled together to Colombia and one of the party was apprehended as they entered our country with a substantial amount of cocaine. The remaining question was whether Robert Barnes intended to be and was a member of the conspiracy.

■ Thus, when the Court permitted the government to inquire into Barnes' similar offenses, Barnes' intent to participate in the conspiracy was sharply at issue and by no means conclusively established by the government. The two possible, and, of course, contradictory versions of the events involved were: 1) McClure brought the drugs into the country on his own and is now trying to implicate the defendants; or 2) McClure happened to be the party who carried the drugs for the group and the defendants are now allowing him to "take the rap". *See Weiss v. United States,* 122 F.2d 675, 681 (5th Cir. 1941) (extrinsic evidence of other frauds committed by defendant are admissible to show that defendant was not merely an "innocent instrument of guilty associates"). The evidence of Barnes' prior drug dealings was thus highly probative to establish Barnes' intent and involvement in the conspiracy, and we cannot say that its value was substantially outweighed by dangers of undue prejudice.

## IV. JURY INSTRUCTIONS REGARDING PRIOR OFFENSES

Barnes next argues that the trial court erred in not instructing the jury that evidence of his prior drug deals could be used only to show his state of mind, rather than to show that he was a man of bad character. *See United States v. Myers,* 550 F.2d

1036 (5th Cir. 1977). Although Barnes' counsel argued strenuously at trial that this evidence was entirely inadmissible, once the evidence was admitted, he made no request for a limiting instruction. The question, therefore, is whether the trial court committed plain error in failing *sua sponte* to give the instruction. *See* Fed.R.Crim.Pro. 52(b); *e. g., United States v. Roger,* 465 F.2d 996 (5th Cir. 1972).

Federal Rule of Evidence 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added). This policy is also embodied in Federal Rule of Criminal Procedure 30 which states in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto . . . ." *But see* Fed.R. Crim.Pro. 52(b).

In *United States v. Sisto,* 534 F.2d 616 (5th Cir. 1976), we emphasized the importance of counsel in safeguarding their client's rights: "The structure of our criminal trial system is founded in large part on a belief in the efficacy of the adversary system, and considerations of judicial economy weigh more heavily in our decisions when counsel for the complaining party has failed to bring a potentially reversible error to the attention of the trial court." *Id.* at 624. (footnote omitted). Thus, in a context similar to this case, we have admonished: "Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused." *United States v. Garcia,* 530 F.2d 650, 656 (5th Cir. 1976), *citing Upham v. United States,* 328 F.2d 661 (5th Cir. 1964).[7]

---

7. A panel of this Court has recently recognized the appropriateness of analogy to cases involving the question of whether a trial court must sua sponte instruct the jury as to the limited use of impeachment evidence. *United States v.* *Diaz,* 485 F.2d 116, 117 (5th Cir. (1978). Although the *Diaz* opinion found plain error in the trial judge's failure sua sponte to instruct the jury as to the limited use of evidence of other offenses, it did not establish a per se rule.

■ Barnes' case does not meet the plain error threshold established in *Garcia.* In view of McClure's testimony against Barnes, the evidence of past offenses was not extremely damaging. McClure's testimony, if believed by the jury,[8] established all the elements of the charges. In addition, Donna Ballard's statement corroborated McClure's story. Applying *Garcia's* second criterion, the need for a limiting instruction was not obvious. Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence, *Sica v. United States,* 325 F.2d 831, 836 (9th Cir. 1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964); *Malatkofski v. United States,* 179 F.2d 905, 914 (1st Cir. 1950), and for other strategic reasons, *Sisto v. United States,* 534 F.2d at 624 n.9. We decline to second guess counsel's decision. Finally, although we cannot fairly say that the evidence of prior offenses was not damaging, it was not so damaging as to require us to reverse on the basis of plain error.

## V. COCONSPIRATOR RULE

Appellant contends that the trial court erred in admitting the hearsay testimony concerning a statement made by Lisa Ballard. At trial, Agent Putsche testified that he told Donna when he was interviewing her that Lisa "had made an admission". Defense counsel objected on the basis of hearsay but the court admitted the statement under the coconspirator rule.[9] The jury was then instructed that it could only consider the statement if it found, based on independent facts, that the conspiracy existed, that the defendant was a member, and that the statement was made in the course of and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E).

■ As a matter of law, the statement was inadmissible under the coconspirator rule. At the time Lisa Ballard made her admission, the cocaine had been confiscated, and McClure and Donna Ballard had been arrested. The conspiracy was ended. Lisa Ballard's statement could not be used against the others. *See United States v. Muller,* 550 F.2d 1375, 1379 n.3 (5th Cir. 1977); *United States v. Sisto,* 534 F.2d 616, 622 n.7 (5th Cir. 1976); *United States v. Killian,* 524 F.2d 1268, 1272 (5th Cir. 1975).

■ We cannot say, however, that this error had a substantial influence on the outcome of the trial. *See United States v. Jennings,* 527 F.2d 862, 867 (5th Cir. 1976). First, the district judge, in issuing the coconspirator instruction, charged the jury that it should not consider Lisa's statement as proof that the conspiracy existed. Although we hold that the coconspirator rule is inapplicable here, the charge minimized the potential prejudice resulting from ad-

Just as in the case of impeachment evidence, our inquiry will focus and depend on the particular facts of each case.

8. We include this proviso in order to foreclose any doubts regarding the consistency of our disposition of the issues of admissibility and plain error. With respect to the admissibility of the prior offenses, we pointed out that the government needed this evidence to establish Barnes' intent. The government's case does not have to be flimsy in order that this evidence be introduced. As thoroughly outlined in *Beechum,* assuming the evidence is relevant, the test is whether its probative incremental value is substantially outweighed by possible prejudice to the defendant. Thus, there may be a situation where the government's case is not so otherwise strong that the evidence is deemed inadmissible, and where the government's case is not so otherwise weak that the absence of a limiting instruction is considered plain error. It must be realized that the former determina-

tion is made at some point in the trial and the latter is made with the benefit of hindsight on appeal. As we have discussed, when the prior offense testimony was admitted, Barnes' intent had been put at issue by the sharply divergent stories of McClure, Donna Ballard, and Barnes himself. In this situation the trial judge was correct in concluding that the government had a genuine need for this evidence which was relevant to a disputed issue in the case. Moreover, this case is unlike *Sisto* where prejudicial evidence was admitted for impeachment purposes without proper instructions. In *Sisto,* although the evidence was for a limited purpose, if used improperly by the jury, it constituted the prosecution's *only* evidence on an essential aspect of its case. 534 F.2d at 625.

9. Fed.R.Evid. 801(d)(2)(E). A statement "by a coconspirator of a party during the course [of] and in [the] furtherance of the conspiracy" is not considered to be hearsay. *Id.*

mission of the statement. *See United States v. Muller,* 550 F.2d 1375, 1379 (5th Cir. 1977). In addition, there was abundant evidence of Barnes' guilt. McClure, the government witness, described the plan in detail and incriminated himself, Barnes, and the Ballard sisters. Moreover, in her confession Donna Ballard outlined a plan and course of conduct similar in almost every way to McClure's testimony. The jury found the confession to have been given voluntarily and we have not disturbed its decision. As we have stated, it would not have been error for the jury to have considered Donna Ballard's confession as substantive evidence against Barnes. Likewise, the confession can be considered on appeal to determine whether the admission of Agent Putsche's statement seriously damaged the defendant. We hold it did not.

## VI. QUESTIONS FROM THE JURY

██ Finally, Appellant Barnes argues that he was deprived of a fair trial because the trial judge did not answer two questions posed by the jury before a verdict was rendered. The argument is frivolous.

After retiring the jury asked two questions of the court:

1) On May 25, 1977, during Donna Ballard's interrogation at the airport, what was her response to the question 'Do you know Robert Barnes?' and

2) Is it possible to open Exhibit B (McClure's passport) for the purpose of checking the date of entry into Cali, Colombia. Also, it would be helpful to see the passport of Robert Barnes.

The Court answered the second question. Due to an objection by defense counsel, however, the first question was not answered before a verdict was rendered. Defense counsel argued that Donna's answer must be presented to the jury in the context in which it was given. A lengthy discussion ensued, at the end of which the judge requested the court reporter to locate Donna Ballard's two answers to the question so that the parties could examine the context in which the answers were given. Meanwhile, the jury returned a verdict.

This was clearly a decision within the sound discretion of the trial judge. *See, e. g., United States v. Rice,* 550 F.2d 1364, 1375 (5th Cir. 1977). If the judge had not entertained defense counsel's arguments that the question be answered in context, counsel would now be arguing that it was error to answer the question. Having delayed the answering of the question in order to serve the interests of his client, counsel cannot now complain that he was prejudiced by the delay.

AFFIRMED.