737 So.2d 377 (1998)
Tony Lee SMITH, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01137 COA.
Court of Appeals of Mississippi.
November 24, 1998.
Rehearing Denied March 9, 1999.
*380 David L. Walker, Batesville, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before THOMAS, P.J., and DIAZ and SOUTHWICK, JJ.
DIAZ, J., for the Court:
¶ 1. Tony Lee Smith, the defendant, appeals the decision of the Circuit Court of Panola County wherein he was convicted of armed burglary at night of an inhabited dwelling and forcible rape. Since the jury was unable to fix the defendant's punishment at life imprisonment, the judge sentenced Mr. Smith to serve a term of twenty-five years for the burglary charge and to a term of thirty years for the rape charge with said sentences to run concurrently. Mr. Smith raises the following issues in this appeal: (1) whether the prosecutor improperly characterized the defendant as a person devoid of feelings for other people, (2) whether the trial court erred in failing to grant the defendant's motion to suppress his alleged confession, (3) whether the defendant was deprived of effective assistance of counsel, (4) whether the verdict was contrary to the law, weight, and sufficiency of the evidence, and (5) whether the cumulative effect of the errors deprived the defendant of due process and his right to a fair trial. We find these assignments of error to be without merit; therefore, we affirm the ruling of the circuit court.

FACTS
¶ 2. During the night-time hours on August 3, 1996, Mr. Smith raped A.M.R., a fifty-two-year-old mobile home resident in Panola County, in the presence of her five-year-old grandson. Ms. R. testified that Mr. Smith, whom she knew, was armed with a rusty pocket knife which he held to her neck during the act of intercourse. She further testified that she was able to persuade Mr. Smith not to kill her and eventually talked him into surrendering the knife to her. After Mr. Smith put his clothes on, Ms. R. asked him to leave; however, he did not have a car, so she took him home in her own car.
¶ 3. After Ms. R. returned home, she bathed. Thereafter, she went to the home of Chief Deputy James Rudd and reported the offense to him. Several hours later, Mr. Smith was brought to the station house and questioned about the incident by Deputies Mike Davis and Bill McGee. After being advised of his constitutional rights and waiving those rights, Mr. Smith gave an incriminating statement which was recorded on audio tape and later played at trial.
¶ 4. Mr. Smith moved to have the confession suppressed on the basis that he was intoxicated when it was given; however, the trial judge found that he was not intoxicated, so he allowed the confession in as freely and voluntarily given. At trial, the State produced four witnesses including the victim Ms. R., who identified Mr. Smith as the man who broke into her home at night and raped her. In addition to the victim, Chief Deputy Rudd testified that he interviewed Ms. R. and conducted an investigation of the crime scene where he found a cut telephone line. Deputy Mike Davis testified that he interviewed Mr. Smith several hours after the rape and burglary. He stated that Mr. Smith freely and voluntarily gave an incriminating statement which was audio tape recorded. The State's final witness, Dana Johnson, a substance analyst at the Mississippi Crime Laboratory, testified that she found seminal fluid on Ms. R.'s panties and her dress. At trial, Ms. Johnson testified that although she identified the presence of seminal fluid, she did not identify the source. After the State's case-in-chief, Mr. Smith *381 moved for a directed verdict of acquittal on the ground the State had failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt. This motion was overruled. Thereafter, Mr. Smith did not testify, but he recalled Deputy James Rudd as witness.
¶ 5. After closing arguments, the jury retired to deliberate on the question of guilt or innocence and returned with a verdict of guilty on both the burglary and rape charges. The next day, a sentencing hearing was conducted during which the defendant presented to the jury facts in extenuation and mitigation of sentence. After the jury failed to unanimously agree on a life sentence, the trial judge imposed a twenty-five year sentence for the burglary and a thirty year sentence for the forcible rape to run concurrently. Thereafter, the trial court further denied Mr. Smith a new trial or judgment notwithstanding the verdict. Feeling aggrieved, Mr. Smith perfects this appeal.

DISCUSSION

I. WHETHER THE PROSECUTOR IMPROPERLY CHARACTERIZED THE DEFENDANT DURING CLOSING ARGUMENTS
¶ 6. Mr. Smith criticizes the following statement made by the prosecution during closing arguments:
[Ms. R.] still had enough feelings for [Deputy Rudd] as a human being that when she went to his house the first time she said, Lorettathat's Mrs. Ruddsaid, Mrs. Rudd, don't wake him, I'll come back. She has feelings for other people, unlike some other person in this courtroom.

(emphasis added). Mr. Smith's defense counsel objected to this characterization of her client, and the objection was overruled. Mr. Smith claims that natural and probable effect of the remark characterized him as "unfeeling" and that created unjust prejudice; therefore, he seeks a new trial based on this isolated remark.
¶ 7. The test for determining whether argument is so improper as to warrant sustaining objection is whether the natural and probable effect of the argument is to create an unjust prejudice against the defendant. Harvey v. State, 666 So.2d 798, 801 (Miss.1995). Absent impermissible factors such as commenting on the defendant not testifying, a prosecuting attorney is entitled to great latitude in framing the closing argument. Dunaway v. State, 551 So.2d 162, 163 (Miss.1989).
¶ 8. Under Harvey, the comment must create unjust prejudice against the defendant which would result in a verdict influenced by prejudice. The case sub judice is different from the scenario depicted in Harvey because here the comment complained about was sufficiently insignificant in the overall context of the case. Furthermore, the jury was succinctly instructed that:

Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any argument, statement or remark having no basis in the evidence should be disregarded by you.
(emphasis added). Moreover, the same jury instruction further told the jury that:
It is your duty to determine the facts and to determine them from the evidence produced in open court. You are to apply the law to the facts and in this way decide the case. You should not be influenced by bias, sympathy, or prejudice. Your verdict should be based on the evidence and not upon speculation or guesswork.
(emphasis added).
¶ 9. This Court has held that when a trial court instructs the jury, the jury is presumed to have followed instructions. Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988). "Our law presumes the jury does as it is told." Williams v. State, 512 So.2d 666, 671 (Miss.1987). "To presume otherwise would be to render the jury *382 system inoperable." Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985).
¶ 10. Mr. Smith has made no showing that the jury departed from the jury instructions in determining his guilt. Without such evidence, we find it difficult to envision that this jury departed from neutrality and made its determination from a biased or prejudiced point of view based upon one isolated comment. Therefore, we find this first assignment of error to be without merit.

II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO SUPPRESS HIS ALLEGED CONFESSION
¶ 11. The defendant bears a heavy burden in attempting to reverse the decision of a trial judge that his confession was admissible. Frost v. State, 483 So.2d 1345, 1350 (Miss.1986). The standard of review upon an appeal of the trial court's decision on this issue is whether the lower court abused its discretion or committed manifest error when ruling that the statement was admissible. Jenkins v. State, 607 So.2d 1171, 1175 (Miss.1992).
¶ 12. A criminal defendant assailing the voluntariness of his statement has a due process right to a reliable determination that the statement was in fact voluntarily given. Gavin v. State, 473 So.2d 952, 954 (Miss.1985). The circuit court judge sits as the fact finder in determining whether a confession was freely and voluntarily given. McCarty v. State, 554 So.2d 909, 911 (Miss.1989). Initially, the judge must determine whether the defendant was adequately warned. Id. Then, under the totality of the circumstances, the judge "must determine if the accused voluntarily and intelligently waived his privilege against self-incrimination." Id. The process to determine whether the confession is admissible takes place during a preliminary hearing outside the presence of the jury. Frost, 483 So.2d at 1350. On the issue of voluntariness, the standard of proof for admissibility is beyond a reasonable doubt. Gavin v. State, 473 So.2d 952, 954 (Miss.1985). Once a confession is determined to be competent evidence by the court, either party may introduce the same evidence at trial plus any other evidence relevant to the weight and credibility of the confession. Rhone v. State, 254 So.2d 750, 754 (Miss.1971).
¶ 13. In Mr. Smith's case, the evidence proffered during the suppression hearing was, at best, conflicting. Mr. Smith claimed, but Deputies Davis and McGee denied, that his statement was induced by intoxication and therefore, was not free and voluntary. After the testimony, the trial judge ruled that Smith's statement was not the product of misapprehension about his rights due to intoxication. Then, the trial judge determined that Mr. Smith was fully capable of giving a free and voluntary statement at the time alleged. Neither the testimony nor the evidence support a ruling by this Court that the trial judge committed manifest error or abused his discretion in finding that Mr. Smith did not freely and voluntarily give his statement. In our opinion, Mr. Smith's statement was both competent and admissible. Therefore, we find this assignment of error to be without merit.

III. WHETHER THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL
¶ 14. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense." U.S. Const. amend. VI. By the Fourteenth Amendment, this right is made obligatory upon the states. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 3, § 26 of the Mississippi Constitution provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself or counsel, or both...."
*383 ¶ 15. In order to succeed on any ineffective assistance of counsel claim, the defendant must satisfy the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 477 (Miss.1984), which requires a showing (1) that counsel's performance was deficient and (2) that the deficiency prejudiced the defense. "The burden to demonstrate both prongs is on the defendant who faces a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." Eakes v. State, 665 So.2d 852, 872-73 (Miss.1995). "Only where there is a reasonable probability that without counsel's error the outcome of the trial would have been different will this Court find ineffective representation." Id. at 873.
¶ 16. Mr. Smith claims that his trial counsel rendered ineffective representation because she failed to place evidence in the record to show that he was intoxicated and unable to make a free and voluntary confession. Additionally, Mr. Smith asserts that his attorney failed to conduct sufficient research into the charge against her client. Although Mr. Smith does not contend on appeal that he was in fact intoxicated at the time he gave his audio taped confession, he criticizes his attorney's attempt at suppressing the statement he made while he was allegedly under the influence. Mr. Smith claims that his trial counsel's performance was inadequate, yet he fails to consider all that she did throughout the course of his trial. She filed a motion to suppress the confession, cross-examined all the witnesses for the State, attempted to discredit the testimony of the prosecuting witness, submitted appropriate jury instructions, requested a directed verdict, made reasonable opening and closing arguments, and contemporaneously objected to the prosecutor's alleged prejudicial characterization of her client as "unfeeling." Furthermore, Mr. Smith does not credit his attorney for her effort during the sentencing phase of the trial when he received less than a life sentence.
¶ 17. Under the two-prong test of Strickland and its progeny, Mr. Smith fails to show that his attorney's performance was deficient at trial and that deficiency prejudiced his defense. His decision not to testify at trial was a reasonable trial strategy because the identification by the victim and his audio taped confession were very compelling. Furthermore, Mr. Smith's attorney tried to discredit the victim's testimony by establishing inconsistencies in her prior statements to the police and her trial testimony. Although Mr. Smith and his lawyer developed a trial strategy, it just did not work. Under Eakes, Mr. Smith has failed to prove that his attorney's performance falls outside the broad spectrum of reasonable professional assistance. Therefore, we find this assignment of error to be without merit.

IV. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIMES OF BURGLARY AND RAPE AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

A. Sufficiency of the Evidence
¶ 18. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; *384 that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 19. In the case sub judice, legally sufficient evidence existed to find Mr. Smith guilty beyond a reasonable doubt. The State made out is prima facie case by having the victim testify about the rape in her home. Furthermore, several police officers testified who examined the crime scene and questioned Mr. Smith. Finally, the State submitted as evidence Mr. Smith's audio taped confession of his crimes. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.

B. Weight of the Evidence
¶ 20. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Mr. Smith's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss. 1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Mr. Smith's motion for a new trial. Accordingly, we dismiss Mr. Smith's final assignment of error as lacking in merit.

V. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED THE DEFENDANT OF DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL
¶ 21. While individual errors, not reversible in themselves, may combine to constitute cumulative error, the supreme court has held that "where there was no reversible error in any part so there is no reversible error to the whole." Coleman v. State, 697 So.2d 777, 787 (Miss.1997) (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)). Since Mr. Smith fails to raise any issues which contain actual error on the part of the trial court, we refuse to reverse based upon allegations of cumulative error.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF THE CONVICTION OF COUNT I OF BURGLARY OF AN INHABITED DWELLING AT NIGHT WITH A DEADLY WEAPON AND SENTENCE OF TWENTY-FIVE (25) YEARS AND COUNT II OF RAPE AND SENTENCE OF THIRTY (30) YEARS, WITH SENTENCES TO RUN CONCURRENTLY, *385 IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., CONCUR.